**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**UNITED STATES OF AMERICA, ex rel.
MARSHA LITTLE HENDREN AND PAUL DAY**                    **PLAINTIFFS**

**V.**                                             **CASE NO. 2:09-CV-00210**

**ANDY MAYO, UNIVERSAL HEALTH SYSTEMS,
PARKWOOD BEHAVIORAL HEALTH SYSTEMS,
and JOHN DOES 1-5**                                        **DEFENDANTS**

---

<u>MEMORANDUM OPINION</u>

This cause comes before the court on the defendants' motion to dismiss [20] the case pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). The plaintiffs have responded in opposition. Having considered the motion and submissions of the parties, the court finds that the motion is well taken and should be granted.

Marsha Little Hendren was a practicing psychologist at Parkwood Behavioral Health Systems ("Parkwood") in Olive Branch, Mississippi from 1991 until her privileges were revoked on April 1, 2007. While operating her practice at Parkwood, Hendren received referrals from hospital staff and enjoyed hospital privileges. In the late 1990's, she began noticing a decline in her patient load concurrent with an increase in her colleague, Dr. Barry Vinick's load. Hendren informed Parkwood's then-CEO, Dr. Andy Mayo of the trend. In September 2005, she discovered that Vinick was poaching clients who had been referred to her by the treating physician. She confronted Vinick and advised him that making a Medicare claim without a written order from a treating physician constituted a false claim. Shortly thereafter, Hendren fired Memphis Practice Management ("MPM"), the company responsible for processing third-

1

party and Medicare bills, for refusing to correct overcharges.

In July 2005, Paul Day was hired as Parkwood's Director of Health Information Services. He was responsible for ensuring that the company complied with the Health Insurance Portability and Accountability Act ("HIPAA") and other state and federal laws. Day conducted an audit in 2006 which revealed Vinick's poaching activities as well as the company's violations of HIPAA, privacy laws, and other false claims. After completing the audit in December 2006, Day received a final warning letter from his supervisor. He soon found another job and stopped working at Parkwood.

In late 2006, Hendren asked Mayo about renting one of Parkwood's offices. According to Hendren, Mayo told her that he would not rent the office to her because she had met with a lawyer. Hendren claims that Mayo further stated that he would terminate her privileges with or without board approval. In January 2007, Parkwood's rules on credential privileges changed, requiring psychologists to submit letters of recommendation from three other psychologists. Parkwood never received one of Hendren's letters. Meanwhile, on March 21, 2007, Hendren filed a complaint in this court against Mayo, Vinick, and Parkwood. She asserted claims for breach of contract, violation of the Civil Rights Act, interference with contract, conspiracy to defraud, and intentional infliction of emotional distress. On April 1, 2007, Parkwood revoked Hendren's privileges and she was no longer allowed to treat patients at the facility.

On October 22, 2007, this court dismissed Hendren's federal claims with prejudice and her state claims without prejudice. Thereafter, on December 28, 2007, she filed a complaint against Parkwood and Mayo in the Circuit Court of Desoto County, Mississippi. In the complaint, she alleged breach of contract, interference with contract, defamation, and intentional

2

infliction of emotion distress. The parties entered a stipulation of dismissal on April 12, 2010.

On November 30, 2009, Hendren and Day filed the instant *qui tam* lawsuit, asserting claims for medicare fraud as well as violations of HIPAA and the False Claims Act ("FCA") against Mayo, Universal Health Services[1] ("UHS"), Parkwood, MPM, Vinick, Evergreen Behavioral Services, LLC[2] ("Evergreen") and unnamed John Does. According to the complaint, Hendren's services were revoked after she threatened to report various HIPAA violations, false claims, and violations of the CFR and Medicare regulations. Day maintains that as a result of doing his job by performing the audit, he suffered unfair disciplinary action, embarrassment, and slander. In this regard, the plaintiffs assert supplemental state law claims for defamation, breach of contract, tortious interference with contract, bad faith, and intentional and/ or negligent infliction of emotional distress. Since the plaintiffs' claims are brought under the FCA, this court has subject matter jurisdiction based on a federal question, 28 U.S.C. § 1331. The court has supplemental jurisdiction over the plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

On June 3, 2010, the United States filed a notice of declination to intervene pursuant to 31 U.S.C. S 3730(b)(4)(B). Defendants Mayo, UHS, and Parkwood filed the instant motion to dismiss, arguing that the complaint should be dismissed because it fails to state a claim under Fed. R. Civ. P. 12(b)(6) and does not meet the heightened pleading standard required by Fed. R. Civ. P. 9(b). The defendants also argue that the state law claims are barred by the applicable statutes of limitations. They further assert that they are entitled to attorneys' fees because the

---

[1]UHS, incorrectly listed in the complaint as "Universal Health Systems," is the owner of Parkwood Behavioral Heath Systems. *See* Docs. 1 and 21.

[2]The plaintiffs allege that Evergreen is a business used and owned in part by Vinick. *See* Doc. 1.

plaintiffs' claims are frivolous.  In response, the plaintiffs confusingly argue that res judicata does not bar their claims because Hendren's prior cases were not adjudicated on the merits and there are different parties to the lawsuit. Subsequent to the filing of the defendants' motion to dismiss, the plaintiffs filed an unauthorized amended complaint, removing Vinick, Evergreen, and MPM as defendants in this case. The court later struck down the amended complaint, but Vinick, Evergreen, and MPM remain terminated from the case.

When considering a motion under Rule 12(b)(6), the court must liberally construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded facts as true. *Woodard v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005).  The complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" will not suffice.  *Colony Ins. Co. v. Peachtree Constr., Ltd..,* 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570.

Under the FCA, any person who:

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

(C) conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

(D) has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

(E) is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on

4

the receipt is true;

(F) knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000...

31 U.S.C.A. § 3729(a).

The Fifth Circuit has stated that in order to state a claim under the FCA, a plaintiff must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that is presented to the Government. *United States ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 266 (5th Cir. 2010). FCA claims must meet the particularity requirements of Fed. R. Civ. P. 9(b). *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997). The plaintiff must provide the "who, what, when, where, and how" of the alleged fraud. *Williams v. WMX Tech., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997).

The complaint herein states that the defendants are liable under the FCA for (1) "claiming payment for unnecessary use of 'Intensive Outpatient Care' for patients whose inpatient care can no longer be justified" and (2) violating FCA whistleblower protections by wrongfully terminating Hendren's privileges and constructively terminating Day's services[3]. *See* Doc. 1 at

---

[3]The other FCA claims are applicable to Vinick, UHS, and Evergreen, who are no longer parties to this dispute.

10. The plaintiffs admit that Intensive Outpatient Care is "an expensive, but allowable Medicare expenditure for patients no longer eligible for inpatient care." *Id*. at 9.

The complaint fails to satisfy Rule 9(b) because no fraudulent activity is particularized. Much of the complaint focuses on Vinick stealing patients from Hendren and billing Medicare. There is no allegation that the defendants submitted bills for unperformed services or acted with the intent of getting a false claim paid by the Government. Though the plaintiffs question the defendants' use of Intensive Outpatient Care, they admit that these services were allowable Medicare expenditures. The plaintiffs' suspicion alone is not enough to establish a valid FCA claim. The complaint does not contain the "who, what, when, where, and how" of the alleged fraud. Thus, the court is unable to determine what the fraudulent activity is, when it took place, or who committed it.

The plaintiffs also argue that the defendants violated FCA whistleblower protections. The court acknowledges that at the time of the plaintiffs' claims, only employees could assert a cause of action under the whistleblower provision of FCA. *See* 31 U.S.C.A. § 3730 (2007). The subsequent statutory amendments, which allow contractors and agents to bring retaliation claims, only apply to conduct on or after May 20, 2009. *See* 31 U.S.C.A. § 3730 (2009). Since Hendren was not a Parkwood employee, she cannot assert a claim under the whistleblower provision. Likewise, Day cannot maintain a cause of action under this provision because he does not allege that he engaged in protected activity. Day only claims that he performed the functions of his job, which included the 2006 audit.

Considering the plaintiffs' inability to bring a retaliation claim and their failure to comply with Rule 9(b), the court finds that the FCA claims should be dismissed. The plaintiffs similarly

fail to plead enough facts to state valid claims for Medicare fraud and HIPAA violations. These claims must also be dismissed.

The court now considers the plaintiffs' state law claims.

Under Mississippi law, there is a one year statute of limitations for defamation and intentional infliction of emotional distress claims. MISS. CODE ANN. 15-1-35 (2011). A negligent infliction of emotional distress claim must be filed within three years after the cause of action accrues. MISS. CODE ANN. 15-1-49 (2011).

The plaintiffs allege that they were defamed while working at Parkwood. Hendren asserts that the defendants intentionally and/ or negligently inflicted emotional distress upon her by revoking her privileges and causing her income to dramatically decrease. By mid 2007, neither Hendren nor Day worked at Parkwood. As this lawsuit was filed in 2009, the defamation and intentional infliction of emotional distress claims are time barred because they were not brought within the one year statutory period. Furthermore, the plaintiffs have not alleged sufficient facts to support an emotional distress claim. To maintain an action for negligent infliction of emotional distress, Hendren must show that the defendants owed her a duty, breached that duty, and the breach thereof caused her to suffer emotional distress. *Funderbunk v. Johnson*, 935 So.2d 1084, 1104 (Miss. Ct. App. 2006). Since the complaint does not establish duty or breach, the plaintiffs fail to assert a claim for negligent infliction of emotional distress.

Though the plaintiffs make several claims regarding a contract, they fail to allege sufficient facts to show that a contract existed. The complaint does not state when a contract was entered into nor does it list the contracting parties or terms. The only mention of a contract is in the plaintiffs' allegations that the defendants tortiously interfered with and breached a contract.

7

Due to the plaintiffs' failure to plead enough facts to show that a contract existed, the claims for tortious interference and breach of contract amounting to bad faith must be dismissed.

The court now considers whether the defendants are entitled to costs of removal under 31 U.S.C. § 3730(d)(4). The statute provides in relevant part that:

> ...the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.

An award for fees under the FCA is reserved for rare and special circumstances. *United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 875 (5th Cir. 2008) (quoting *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006-7 (9th Cir. 2002)). In the present case, the court finds that the plaintiffs' claims are not clearly frivolous or brought primarily for the purposes of harassment. Therefore, the defendants' fee request is denied.

For the foregoing reasons, the court finds that the motion to dismiss is well taken and should be granted. A separate judgment shall be entered this day pursuant to Fed. R. Civ. P. 58.

This the 8th day of February, 2012.


**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

8